UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JERRY W. JOHNSON                                    CIVIL ACTION

VERSUS                                              NO. 11-52-BAJ-SCR

OFFICE FOR CITIZENS WITH
DEVELOPMENTAL DISABILITIES,
DEPARTMENT OF HEALTH AND
HOSPITALS, STATE OF LOUISIANA

RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a motion for summary judgment (doc. 7) filed by Defendant Office for Citizens with Developmental Disabilities of the Department of Health and Hospitals ("DHH," or "Defendant"). Plaintiff Jerry Johnson ("Johnson," or "Plaintiff") opposes the motion (doc. 10), and DHH has filed a reply (doc. 15). Jurisdiction is based on 28 U.S.C. § 1331. There is no need for oral argument.

I.      FACTUAL BACKGROUND

Plaintiff Jerry Johnson, an African-American male, suffers from Multiple Sclerosis and Trigeminal Neuralgia. Johnson currently is employed by DHH in the Division of Mental Retardation and Developmental Disabilities ("MR/DD') as a Regional Associate Administrator III at the Northwest Supports and Services Center ("Northwest facility"). Until early 2007, the Plaintiff was employed at the Northeast Support and Services Center ("Northeast facility"), which is a care facility for individuals with mental disabilities.

In 1999, Johnson began working as a Regional Administrator II at the Northeast facility, the top position at the facility where he oversaw all programs and employees. In February 2007, Johnson was detailed from his position as Regional Administrator II at the

1

Northeast facility to the Northwest facility where he would receive the same pay and work in a position that was unclassified at the time. According to Johnson, this detail to the Northwest facility was a "demotion," and he initially refused to accept it. Furthermore, Johnson claims that, upon being transferred to the Northwest facility, he was not provided with a staff or subordinate employees, despite allegedly being transferred to a supervisory position. According to DHH, Johnson's work performance at the Northeast facility was deficient, though Johnson disputes these allegations. DHH also asserts that a decision was eventually made to move the Northeast facility under the supervision of the Northwest facility.

Following Johnson's transfer in February 2007, Tim Swart, a white male under the age of 40, was detailed into Johnson's former position as Regional Administrator II at the Northeast facility. Subsequently, in August 2007, Johnson claims he was advised that his new position at the Northwest facility would be classified as a Regional Associate Administrator III position, but that he refused to accept the alleged "demotion." On November 8, 2007, Johnson was advised that DHH was being reorganized and that his former Regional Administrator II position at the Northeast facility was being abolished. According to Johnson, he then reluctantly accepted the new position at the Northwest facility.

On July 13, 2007, Johnson, who was 49 years old at the time, initiated correspondence with the U.S. Equal Employment Opportunity Commission ("EEOC") regarding his claims of discrimination based upon disability, race, and age. On July 31, 2007, the Plaintiff completed an EEOC questionnaire. On September 21, 2007, the EEOC forwarded notice of the charge to DHH. Subsequently, on March 5, 2008, Johnson and the EEOC finalized his formal charge document. On September 27, 2010, the Plaintiff received a "Right to Sue" letter from the EEOC.

On December 22, 2010, Johnson filed suit in the 19th Judicial District Court in Louisiana alleging he was subject to discrimination. Specifically, the Plaintiff asserted claims for: 1) racial discrimination under Title VII of the Civil Rights Act of 1964; 2) discrimination due to a disability under the Americans with Disabilities Act (ADA); and 3) age discrimination under the Age Discrimination in Employment Act (ADEA). DHH timely removed the action to this Court.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor. *Coleman v. Houston Independent School District*, 113, F.3d 528 (5th Cir. 1997). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The non-movant's burden, however, is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. V. Catrett*, 477 U.S. 317, 324 (1986).

## III.   LAW AND DISCUSSION

The filing of a charge of discrimination is a precondition to filing a civil lawsuit in federal court. *See Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). When deciding

3

whether certain correspondence constitutes an official charge, a court should look to whether the documentation is sufficient "to set the administrative machinery in motion." *Conner v. Louisiana Dept. of Health and Hospitals*, 247 Fed. Appx. 480, 481 (5th Cir. 2007) (quoting *Price v. Southwestern Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982)). In doing so, the Fifth Circuit has considered whether the complaint "informs the EEOC of the identities of the parties and describes the alleged discriminatory conduct in enough detail to enable the EEOC to issue an official notice of charge to the respondent." *Id.*

Federal regulations require that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e-5(b). The Supreme Court has recognized that, under these regulations, it is appropriate to interpret the statute as allowing a claimant to verify or affirm a complaint under oath after the relevant filing period has elapsed, since the verification can relate back to the date of the original complaint.[1] *See Edelman v. Lynchburg College*, 535 U.S. 106, 118 (2002).

a. **Limitations Period**

An EEOC charge must be filed within 180 days of the occurrence of the alleged unlawful employment practice, though this time period is extended to 300 days if the claimant institutes proceedings with a State or local agency that has authority to grant or seek relief from the alleged unlawful practice. 42 U.S.C. § 2000e-5(e); *see Vielma v. Eureka Co.*, 218 F.3d 458, 462-63 (5th Cir. 2000). The Fifth Circuit has acknowledged that, when a Louisiana claimant files an initial charge with the EEOC, "the claimant is deemed to have initially instituted proceedings with the state agency and the 300-day period is triggered." *Conner*, 247 Fed. Appx. at 481. Additionally, § 2000e-5 provides that notice of the charge

---

[1] The Supreme Court noted that the statute "merely requires the verification of a charge, without saying when it must be verified." *Edelman*, 535 U.S. at 112.

4

"shall be served upon the person against whom such charge is made within ten days" of filing. § 2000e-5(e)(1). These time limits have been liberally construed by the Fifth Circuit, "considering the insurmountable workload difficulties of the EEOC which prevent resolution of claims in an expeditious manner." *Zambuto v. American Tel. & Tel. Co.*, 544 F.2d 1333, 1334 n. 5 (5th Cir. 1977).

DHH argues that, since Johnson's completed the formal EEOC charge document on March 5, 2008, any claims arising more than 300 days before that date are time barred. Johnson contends that his claims should relate back to 300 days before the date of his initial correspondence with the EEOC, which occurred on July 13, 2007. In its reply, DHH argues that, even if the Court considers Johnson's July 2007 correspondence as initiating the charge, all events should be limited to those occurring within 300 days from the date that notice of the charge was provided to DHH, which occurred on September 21, 2007.

The Court finds that Johnson's July 13, 2007 letter to the EEOC should be considered as the act that initiated the charge, since the letter "set the administrative machinery in motion" and began a series of correspondence[2] between Johnson and the EEOC that led to the submission of a formal charge document. *Price,* 687 F.2d at 78. Thus, when applying the rationale of the Supreme Court in *Edelman,* Johnson's subsequent verification of the charge may relate back to July 13, 2007, the date on which Johnson submitted his unverified complaint to the EEOC. *See Edelman,* 535 U.S. at 118.

The Court recognizes that DHH did not receive notice of Johnson's claim pursuant to § 2000e-5(e)(1) until September 21, 2007, which is more than ten days following Johnson's submission of his complaint to the EEOC; however, the Court finds that the EEOC

---

[2] Following Johnson's July 13, 2007 letter to the EEOC, he completed an EEOC Intake Questionnaire on July 31, 2007. The EEOC then sent notice of the charge to DHH on September 21, 2007. On March 5, 2008, the EEOC and Johnson submitted a formal charge document.

procedure is intended to protect the employee, and the interests of justice are best served by determining the claim to have been filed on July 13, 2007. *See Deyo v. City of Deer Park*, 664 F.2d 518, 522 (5th Cir. 1981) (noting that "[t]he Commission's failure to fulfill its post-filing responsibilities has been held not to affect the claims of individual grievants where Commission action lies beyond their control"); *see also Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 457 (5th Cir. 1970). Thus, Johnson's claims are timely insofar as they date back to September 17, 2006, which is 300 days before the date on which Johnson sent his initial letter to the EEOC.[3]

### b. Applicable Standards to Discrimination Claims

The Supreme Court has observed that courts "must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175 (2009) (quoting *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008) (distinguishing standards that apply to Title VII actions from those applicable under the ADEA)). In the instant case, the Court is left to speculate as which arguments support or oppose summary judgment with respect to each discrimination claim due to the fact that the parties do not always distinguish the applicable standards when referring to the three different claims of discrimination.

### c. Disability discrimination claim under the ADA

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of the individual..." 42 U.S.C. § 12112(a). To prevail on his claim under the ADA, Johnson must establish that: (1) he is disabled or is regarded as disabled, (2) he is qualified for the job, (3) he was subjected to an

---

[3] Moreover, the earliest allegation of discriminatory conduct referenced by Johnson in his state court Petition occurred on January 5, 2007, which is within 300 days of the date that DHH received notice of the charge.

6

adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees. *See McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 279-80; *see also Burch v. Coca-Cola Co.*, 119 F.3d 305, 320 (5th Cir. 1997), *cert. denied*, 522 U.S. 1084 (1998).

With respect to the third prong of the above test, in order to make a prima facie showing of disability discrimination, Johnson must establish that he was transferred "because of" his disability. *McInnis,* 207 F.3d at 282. DHH contends that Johnson was not terminated, his pay was not reduced following the transfer, that he continued to supervise employees, and that the transfer was to a facility in his home town. In response to DHH's argument regarding causation, Johnson simply contends that he considered the transfer to be a demotion that resulted in a lower potential rate of pay (as a result of a loss of opportunity for advancement) and caused him to lose promotional and advancement opportunities.

The Court finds that Johnson has not established a prima facie case for disability discrimination. In his discussion of the discrimination claim under the ADA, while Johnson discusses at length why his condition should be classified as a disability and how he was allegedly treated differently than other employees outside his class, he offers no evidence under the third prong to show that the transfer was an adverse employment action that occurred *because of* his disability. For example, as to the specific reasons cited by DHH for Johnson's transfer, Johnson merely refers to previous arguments made concerning his claim for *racial* discrimination. The Court is not able to conclude how these arguments support his contention that there is a genuine issue of material fact as to the *disability* discrimination claim.

7

Since Johnson fails to show how the transfer was made because of his disability, there is no need to consider the arguments as to the other factors necessary to establish a claim under the ADA.

### d. Racial discrimination claim under Title VII

The language of Title VII "makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973). The Fifth Circuit has considered claims of racial discrimination under the traditional burden-shifting rules articulated by the Supreme Court in *McDonnell Douglas*. Thus, in order to survive summary judgment in a racial discrimination claim, Johnson must first establish a prima facie case of discrimination. *Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 941 (5th Cir. 2005).

If Johnson succeeds, then the burden shifts to DHH "to proffer a legitimate, non-discriminatory reason" for transferring Johnson from the Northeast to the Northwest facility. *Id.* If DHH is successful, then the burden shifts back to Johnson to prove that DHH's "legitimate, non-discriminatory reason was simply a pretext of discrimination." *Id.*

In order to establish a prima facie claim of racial discrimination, Johnson must show he was: (1) a member of a protected class, (2) qualified for the position he held, (3) subject to an adverse employment action; and (4) treated differently from others similarly situated outside of the protected class. *See id.* The burden of establishing a prima facie case of disparate treatment in an employment discrimination suit is "not onerous." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981).

8

It is not disputed that Johnson, who is an African-American, is a member of a protected class. With respect to the second prong, DHH alleges that Johnson cannot show he was qualified for his position based on a number of alleged deficiencies in the performance of his duties. Johnson asserts that his performance was not deficient and offers explanations for each of the alleged deficiencies proffered by DHH.

With respect to the third prong, Johnson contends he was subject to an adverse employment action because he was allegedly demoted to the status of MR/DD Regional Associate Administrator III, which resulted in a lower potential rate of pay and caused him to lose promotional and advancement opportunities. In response, DHH argues that an employment action that limits an employee's future opportunities for promotion, but does not affect job duties, compensation, or benefits does not qualify as an adverse employment action under the Fifth Circuit's jurisprudence. *See Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999).

Finally, with respect to the fourth prong, Johnson argues that, as the only black Administrator at any of the eight DHH Support Service Centers, he was treated differently than Tim Swart, Fred Williford, and Jim Plank, white males allegedly detailed or hired into Johnson's former higher level position at the Northeast facility. DHH argues that Williford and Plank were not detailed into Johnson's former higher level position, and that the only evidence Johnson offers as to Swart is that Swart is white and Johnson is black. Furthermore, DHH contends that none of the individuals referenced by Johnson committed the same or similar violations in the performance of their work that Johnson allegedly committed.

When viewing the facts in a light most favorable to the Plaintiff, the Court finds that Johnson has established a prima facie case for racial discrimination; however, the Court also finds that DHH has offered a legitimate and non-discriminatory reason for Johnson's

9

transfer to the Northwest facility given the alleged deficiencies in Johnson's work performance. Thus, the Court's inquiry centers on whether Johnson has carried his burden to establish that the justification provided by DHH for the transfer was a "pretext for discrimination." *See Abarca*, 404 F.3d at 941.

The Court finds that there is a genuine issue of material fact as to whether Johnson's transfer was a pretext for racial discrimination. When viewing the facts in Johnson's favor, a reasonable jury could agree with his responses to DHH's six alleged reasons for the transfer due to the deficiencies in the performance of his work. Furthermore, while DHH's explanation that the Northeast facility was being moved under the ultimate supervision of the Northwest facility could also explain the reason for the transfer, the facts alleged by Johnson include that DHH detailed Tim Swart, who was outside of Johnson's protected class, to Johnson's same position before that placement was actually reclassified as a lower level position. Thus, a reasonable jury could also find that, had Johnson's work product not been deficient, then DHH conceivably could have waited to transfer Johnson until his former position was actually reclassified to the lower level as a part of the restructuring, instead of detailing Swart to the higher ranking position in the meantime.

Therefore, a genuine issue of material fact exists as to whether Johnson's transfer was a pretext for discrimination.

### e. Age discrimination claim under the ADEA

The ADEA makes it unlawful for an employer to discriminate against an employee because of the employee's age. *See Gross v. FBL Financial Services*, 557 U.S. 167, 175 (2009). When analyzing a claim under the ADEA, the Fifth Circuit has employed the

*McDonnell Douglas* framework.[4] Thus, to establish a prima facie case of age discrimination, Johnson must show that he was (1) a member of a protected class, (2) qualified for the position he held, (3) subject to an adverse employment action; and (4) either a) replaced by someone outside the protected class, b) replaced by someone younger, or c) otherwise subject to an adverse employment action because of his age. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). Moreover, with regard to the third prong, the Supreme Court has found that a plaintiff must establish "that age was the 'but-for' cause of the challenged adverse employment action." *Gross,* 557 U.S. at 180.[5]

It is not disputed that Johnson is a member of the protected class since he is over 40 years old. DHH argues that Johnson was not qualified for the position and that he has not identified any age-based remarks made to him. With regard to the fourth prong, DHH contends that Tim Swart, Fred Williford, and Jim Plank were each members of the protected class, and that the age difference between Swart, Williford, and Johnson is nominal.

In response, Johnson first argues he has established a prima facie case for age discrimination since he was subject to an adverse employment action due to his alleged demotion and treated differently than Swart and Williford, who were younger and detailed into Johnson's former position at the Northeast facility. Johnson then simply contends that a finding of age discrimination is proper because, "as previously argued," (doc. 10), the six alleged reasons given by DHH for Johnson's transfer are "unworthy of credence," (doc. 10) (citing *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147 (2000)).

---

[4] The Fifth Circuit has applied the *McDonnell Douglas* framework to age discrimination cases because it has found itself "bound by circuit precedent" to do so. *Jackson v. Cal-Western Packaging Corp.,* 602 F.3d 374, 378 (5th Cir. 2010).

[5] The Supreme Court has also noted that "the burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor of that decision." *Gross* at 180.

11

The Court finds that Johnson has not presented a genuine issue of material fact that his age was the "but-for" cause of his transfer to the Northwest facility. *See Gross* at 180. After all, when referring to the six reasons cited by DHH for Johnson's transfer, Johnson simply refers back to arguments made in other sections of his opposition to summary judgment. The Court is forced to speculate how those earlier arguments, which pertained to the claims of racial and disability discrimination, support Johnson's claim of age discrimination. The Court is not able to make this connection. Thus, Johnson has not presented a genuine issue of material fact as to his claim for age discrimination.

Since Johnson fails to establish that age was the "but-for" cause of his transfer, which the Supreme Court has required, there is no need to consider the arguments as to the other factors necessary to establish a claim under the ADEA.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED as to Johnson's claims for discrimination based on disability under the ADA and age under the ADEA, and DENIED as to Johnson's claim for racial discrimination under Title VII. Plaintiff's claims under the ADA and ADEA are hereby DISMISSED.

Baton Rouge, Louisiana, July 15, 2013

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA